UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA

                v.                                  NOTICE OF MOTION

                                                    12-CR-160 (NGG)

SHERMAN BARRO,

               Defendant
------------------------------------------------------X

      PLEASE TAKE NOTICE, that upon the annexed declaration of Sherman Barro, the memorandum of law, and all the prior papers and proceedings herein, the Defendant, Sherman Barro, will move before the Honorable Nicholas G. Garaufis, United States District Judge for the Eastern District of New York, at the United States Courthouse located at 225 Cadman Plaza East, Brooklyn, New York, for an order pursuant to Federal Rule of Criminal Procedure 12(b)(3) (C) suppressing statement evidence or, in the alternative, ordering a pre-trial evidentiary hearing, and (2) granting such additional relief as the Court may deem just and proper.

Dated: Brooklyn, New York
       December 4, 2012

                                                    Respectfully submitted

                                                    Federal Defenders of New York, Inc.
                                                    One Pierrepont Plaza - 16th Floor
                                                    Brooklyn, New York 11201

                                   By:    Kannan Sundaram, Esq.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
UNITED STATES OF AMERICA

                V.

SHERMAN BARRO

                Defendant.
-------------------------------------------------X

MEMORANDUM OF LAW

12-CR-160 (NGG)

## PRELIMINARY STATEMENT

Defendant Sherman Barro is charged with Importation of Cocaine and Possession of Cocaine with Intent to Distribute based on allegations that he imported cocaine into the United States on a commercial flight originating in Kingston, Jamaica on January 31, 2012. Defendant submits this memorandum of law is submitted in support of his motion to suppress statements he made to federal law enforcement agents after they arrested him at the JFK airport on that date. As set forth below, the statements were obtained in violation of his Fifth Amendment privilege against self-incrimination and *Miranda v. Arizona*, 384 U.S. 436 (1966), because the agents improperly threatened Mr. Barro and cajoled him into speaking to them before advising him of his rights.

## STATEMENT OF FACTS

On January 31, 2012, Mr. Barro and his wife and 1½-year-old son arrived at the JFK Airport on a Carribean Airlines flight from Kingston, Jamaica. Complaint ¶1; Barro Declaration ¶2. After retrieving their luggage from the baggage claim, they were stopped by Customs and Border Protection ("CBP") officers for a baggage inspection. Complaint ¶2; Barro Decl. ¶3.

While searching Mr. Barro's bags, the CBP officer asked him pointed questions about his trip, including why he traveled to Jamaica and why he bought his plane tickets so close to the date he traveled. The officer summoned another officer to consult him about one of the bags. Barro Decl. ¶4. Noticing that two of the bags had unusually thick bottoms, he probed the bags. Complaint ¶2. The probe revealed a white powdery substance (*id.*), and the officer made an announcement to the effect that he "got it." Barro Decl. ¶4.

The CBP officers took Mr. Barro and the luggage to a room, and took his wife and child to a different room. *Id.* ¶5. They field tested the substance in Mr. Barro's presence. *Id.*; See Complaint ¶2. When it tested positive for cocaine, they told him it was cocaine and placed him under arrest. Complaint ¶2; Barro Decl. ¶5. Before turning him over to the ICE agents, the CBP agents told Mr. Barro that it was a lot of cocaine and that he should tell the ICE agents the truth and everything would be okay. Barro Decl. ¶5.

The ICE agents likewise told Mr. Barro that it was a large quantity of cocaine, that it could get him locked up for 25 years, and that he should tell them what he knows and they would tell the prosecutor that he cooperated and gave them information. If he did not speak to them, on the other hand, his wife would be arrested as well, and their child could end up in foster care. In the course of these pre-*Miranda* discussions with Mr. Barro, the agents shuttled back and forth between the room where they were detaining him and the room where they were detaining his wife and child. Barro Decl. ¶7.

Some 20 or 30 minutes later, the agents took Mr. Barro to another room upstairs. There, he could see his wife and child sitting outside. At this juncture, the agents advised Mr. Barro of his rights for the first time. Because he did not want his wife to be arrested and was also concerned about what would happen to his child in that event, Mr. Barro waived his rights and

agreed to speak to the agents. The agents then questioned Mr. Barro at length about his trip to and from Jamaica, as well as the events leading up to it. Barro Decl. ¶8.[1]

ARGUMENT

**MR. BARRO'S STATEMENT WAS OBTAINED IN VIOLATION OF *MIRANDA v. ARIZONA*.**

Under the now familiar *Miranda* rule, "if a person in custody is to subjected to interrogation, he must first be informed in clear and unequivocal terms" of his rights to remain silent, that any statement he does make may be used as evidence against him, and that he was a right to the presence of an attorney, either retained or appointed. *Miranda v. Arizona*, 384 U.S. 436, 444, 467-68 (1966); *Thompson v. Keohane*, 516 U.S. 99, 107 (1995); *Stansbury v. California*, 511 U.S. 318, 322 (1994).

A defendant is in custody for *Miranda* purposes if he has been subjected to "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest," *California v. Beheler*, 463 U.S. 1121, 125 (1983), so that a reasonable person in his position would feel "not at liberty to terminate the interrogation and leave." *Tankleff v. Senkowski*, 135 F.3d 235, 243 (2d Cir. 1998). Here, Mr. Barrow was in custody when the CBP agents, after probing his bags and finding something incriminating, separated him from his family and detained him in a search room. At that juncture, a reasonable person in his position would have understood that he was not free to leave. *See United States v. Ali*, 68 F.3d 1468 (2d Cir. 1996). In any event, he was in custody by any measure once the agents field-tested the drugs and placed him under arrest.

---

[1] The ICE "Report of Investigation" summarizing Mr. Barro's statement to the agents has been provided to defense counsel by the government.

"The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 444. The government bears the "heavy burden" of demonstrating a voluntary waiver, *Id.* at 475, and "any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege." *Miranda*, 384 U.S. at 476.

Here, Mr. Barro was threatened and cajoled into waiving his rights, making the ensuing waiver invalid. The agents threatened Mr. Barro into a waiver by telling him they would arrest his wife if he did not speak to them and tell them what he knows, and compounded the threat by suggesting that his young child would then be placed in foster care. The agents cajoled Mr. Barro into a waiver by advising him that he faced 25 years in prison and that it was in his best interest to cooperate and give them information so they could put in a good word with the prosecutor. It is improper, and antithetical to *Miranda*, for law enforcement officials to persuade a defendant in custody to waive his constitutional rights: "If the individual desires to exercise his privilege, he has the right to do so. This is not for the authorities to decide." *Miranda*, 384 U.S. at 480. As it was influenced by these improper threats and advice, Mr. Barro's waiver of rights cannot be deemed voluntary. *See id.* at 476.

Not only impeding Mr. Barro's ability to make an unfettered decision about exercising his rights, some of the things the agents said to him before advising him of his rights amounted to "interrogation" under *Miranda*. "Interrogation" includes express questioning but also its "functional equivalent," meaning "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

Most clearly, the agent's statement that Mr. Barro should tell them what he knows was interrogation. Indeed, such a statement is literally a request that the suspect incriminate himself. But the agent's statements to Mr. Barro adverting to the large quantity of cocaine he possessed, the sentencing exposure he faced, and the resulting need to cooperate with them, were also the functional equivalent of interrogation. *See Innis*, 446 U.S. at 301; *United States v. Szymaniak, 934 F.2d 434, 439 (2d Cir. 1991)* (confronting defendant with incriminating information was interrogation). Since the required warnings must precede the *interrogation*, and not just the statement, that pre-warning interrogation violated *Miranda*.

## CONCLUSION

Because Mr. Barro's ostensible waiver of rights was not knowing, voluntary and intelligent, and because it was, in any event, preceded by interrogation, his ensuing statements must be suppressed.

Respectfully submitted,

Kannan Sundaram
Assistant Federal Defender
(718) 330-1203

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

UNITED STATES OF AMERICA                :

    -against-                           :      DECLARATION IN SUPPORT OF
                                               DEFENDANT'S MOTION

                                        :      CR 12-160 (NGG)

SHERMAN BARRO,
        Defendant.                      :

-------------------------------------------------------X
```

SHERMAN BARRO declares under penalty of perjury, pursuant to 28 U.S.C. §1746, that the following is true and correct:

1. I am the defendant in the above-captioned case.

2. On January 31, 2012, I flew from Kingston, Jamaica to the John F. Kennedy Airport in New York with my wife and 1½-year-old son.

3. Upon arriving at J.F.K., we retrieved our luggage from the baggage claim. As we were preparing to leave the airport, customs officers stopped us and directed us to a table to search our luggage.

4. An officer opened the bags and removed and inspected the contents. While doing so, he asked several questions about the trip, including why I went to Jamaica and why I bought the plane tickets so close to the date of travel. At some point, he called over another officer and asked him a question about one of the bags. He poked the bag using some sort of instrument, and then said that they "got it" or something like that.

5. Officers then took me to a room and took my wife and child to a different room. There, they performed some type of test and said that what they recovered from my luggage tested positive for cocaine. They told me it was a lot of cocaine. They told me that some agents were going to come and talk to me. They told me to tell those agents the truth and everything would be okay.

    7. Two agents came into the room and spoke to me. These agents went back and forth between the room where I was being held and the room where my wife and child were being held. One of them said this was a lot of cocaine and that it could get me locked up for 25 years. He told me to tell them what I know, and that if I spoke to them they could tell the prosecutor that I spoke to them and gave them information. He indicated that if I did not speak to them my wife would be locked up or arrested, too. He asked me if I wanted to see my child in a foster home, and attacked me (verbally) for putting my child through this.

    8. After some 20 or 30 minutes, the agents took me upstairs and put me in another room. There, I could see my wife and child sitting outside. They told me about my rights for the first time. I signed a form and agreed to speak with them, because I was afraid of what might happen to my wife and child. They then questioned me at length about my trip to and from Jamaica and the events leading up to it.

    9. My lawyer prepared this affidavit. It does not indicate all of the facts and circumstances of which I am aware.

December 4, 2012
Brooklyn, New York

_____
Sherman Barro