UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

UNITED STATES OF AMERICA              :

   -against-                                    :            12-CR-160 (NGG)

SHERMAN BARRO,                              :

               Defendant.              :
--------------------------------------------------------X

# DEFENDANT'S POST-HEARING REPLY BRIEF
# IN SUPPORT OF HIS MOTION TO SUPPRESS STATEMENTS

                                                           Kannan Sundaram, Esq.
                                                           Federal Defenders of New York
                                                            Attorney for Defendant
                                                           One Pierrepont Plaza - 16th Floor
                                                           Brooklyn, New York  11201
                                                           (718) 330-1203

TO:   Loretta Lynch, Esq.
         United States Attorney
         Eastern District of New York
         Attn: AUSA Tiana A. Demas

Defendant Sherman Barro, by his attorneys, submits this reply brief in further support of his motion to suppress his post-arrest statements to federal law enforcement agents.

## ARGUMENT

**CONTRARY TO THE GOVERNMENT'S POSITION, ADVISING AND PERSUADING AN UNCOUNSELED ARRESTEE IN CUSTODY TO GIVE UP HIS 5ᵀᴴ AMENDMENT RIGHTS BEFORE ADVISING HIM ABOUT THEM DOES NOT COMPLY WITH THE SPIRIT OR LETTER OF *MIRANDA*, AND REQUIRES SUPPRESSION OF THE STATEMENTS THEREBY OBTAINED UNDER *MIRANDA*'S PROPHYLACTIC RULE.**

In defendant's post-hearing brief, he argued that his post-arrest statements should be suppressed because they were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). As set forth in the brief, Agent Wilbert's pre-warning "spiel" violated *Miranda* and requires suppression of the ensuing statements for two related but distinct reasons. First, his acknowledged procedure of exhorting and persuading the defendant to speak to him because that's in his best interest, then asking him if he is willing to speak to him, and only then reading him his rights, simply does not comply with the *Miranda* rule. *See* Defendant's Post-Hearing Brief, at pp. 6-13. It violates its letter and defeats its purpose, and it does so intentionally and by design. *See id.* at pp. 12-13, citing *Missouri v. Seibert*, 542 U.S. 600, 618, 620-21 (Kennedy, J. concurring). For this reason, suppression of the defendants' statements is required under *Miranda*'s prophylactic rule.

Second, and for much the same reason, this manipulative and misleading pre-warning cajoling improperly interfered with the defendant's ability to make a properly informed and unfettered decision about whether to exercise or waive his rights in the first place. On this record, which also established that the advice succeeded by persuading Mr. Barro to give up the

1

rights before he was then advised about them in the next breath, it cannot be said that the government met its heavy burden of demonstrating that the waiver of rights was knowing, voluntary and intelligent. *See* Def. Post-Hearing Brief at pp. 13-15.

In its letter in response to defendant's post-hearing brief, the government addresses only the waiver issue, and completely ignores the preliminary issue of whether the procedure this agent employed complied with *Miranda*'s requirements to begin with. It did not, and because it did not, the statement thereby obtained must be suppressed without even getting to an analysis of whether the waiver met constitutional standards.

To understand this, it is helpful to identify the rule the Supreme Court actually announced in *Miranda*, and the remedy it imposed for not complying with the rule. The rule is not, as the government would have it, that law enforcement authorities may advise and persuade a suspect in custody to speak to them as long as they stop and read the warnings to him right before he makes statements. Indeed, the cynical and self-serving view of *Miranda* the government asks this Court to accept has been pointedly repudiated by the Supreme Court, in *Miranda* itself and more recently. *See Miranda*, 384 U.S. at 476 ("The requirement of warnings and waiver of rights is a fundamental with respect to the Fifth Amendment privilege and not simply a preliminary ritual to existing methods of interrogation"); *Missouri v. Seibert*, 542 U.S. 611 ("it would be absurd to think that mere recitation of the litany suffices to satisfy *Miranda* in every case").

The rule announced in *Miranda*, instead, is this: "[U]nless we are shown other procedures which *are at least as effective in apprising accused persons of their right of silence* and in assuring a continuous opportunity to exercise it, the following safeguards *must be observed*." 384 U.S. at 467 (emphasis added). "*At the outset, if a person in custody is to be subjected to*

*interrogation, he must first be informed in clear and unequivocal terms that he has the right to remain silent*, [] accompanied by the explanation that anything said can and will be used against" him, then "clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation" and that if he cannot afford an attorney one will be appointed to him prior to any questioning. *Id.* at 467, 469, 471, 473, 479 (emphasis added). Statements "elicited in noncompliance with" this rule must be suppressed. *Stansbury v. California*, 511 U.S. 318, 322 (1994); *see Miranda*, 384 U.S. at 479; *see Oregon v.* Elstad, 470 U.S. 298, 306 (1985) (a violation of *Miranda*, a prophylactic exclusionary rule that "serves the Fifth Amendment and sweeps more broadly than the Fifth Amendment itself," requires suppression of statements even if they were voluntary).

The procedure Agent Wilbert employed in this case violated this rule at every turn. He did not advise Mr. Barro of his rights "[a]t the outset," "first," *before* embarking upon interrogation. What he advised Mr. Barro at the outset is the opposite of what the *Miranda* rule requires: Instead of advising Mr. Barro that he had the right *to remain silent*, he advised Mr. Barro that he should *speak to him, cooperate, and tell him the truth*. Instead of advising Mr. Barro that anything he says *can and will be used against* him, he advised him that what he says, if truthful, will likely be used *for* him, by influencing the prosecutor to help him and the judge to give him a lower sentence. Instead of advising Mr. Barro that he had the right to consult a lawyer and have the lawyer with him during questioning, the agent advised him that if he cooperated and told him the truth now, he and the AUSA would help protect his interests.

Having undercut the value of Mr. Barro's Fifth Amendment rights by this improper and misleading advice, it cannot be said that Agent Wilbert, on balance, informed him of those rights

3

"in clear and unequivocal terms[.]" *Miranda,* 384 U.S. at 467; *see People v. Dunbar*, \_ N.Y.S.2d \_, 2013 WL 361822, *8 (N.Y.A.D. 2 Dept.). As Justice Kennedy observed in his concurring opinion in *Missouri v. Seibert,* with respect to the similar "question-first" tactic condemned in that case, "[t]he *Miranda* rule would be frustrated were we to allow police to undermine its meaning and effect." 542 U.S. at 621.

Not only failing, by a large margin, to simply do what *Miranda* requires, the procedure Agent Wilbert employed also did what *Miranda* expressly forbids: Subject a suspect in custody to interrogation before advising him of his rights. Without question, Agent Wilbert's statements exhorting Mr. Barro to cooperate and "tell the truth," and informing him that his cooperation would be brought to the attention of the AUSA, constituted interrogation or its functional equivalent. *United States v. Plugh*, 576 F.3d 135, 143-44 (2d Cir. 2009); *United States v. Montana*, 958 F.2d 516, 518 (2d Cir. 1992); *United States v. Johnson*, 812 F.2d 1329, 1331 (11th Cir. 1986). Since the required warnings must precede the *interrogation*, and not just the statement, this pre-warning interrogation violated *Miranda*. *See* 384 U.S. at 444, 445, 457, 467, 477, 479.

In addition to violating the clear and simple rules set forth in *Miranda*, Agent Wilbert's approach strikes at the core of the purpose behind those rules. *Miranda* does not permit law enforcement authorities to ask questions or make statements that are the functional equivalent of interrogation, thereby exacerbate and exploit the inherently coercive" environment created by custody and interrogation, and then interpose the warnings before eliciting the defendant's statements. The point of the *Miranda* rule is to *combat* the pressures of the custodial environment, 384 U.S. at 467, not *exploit* them. Here, Agent Wilbert, by impressing upon Mr.

Barro the gravity of his situation, the advantages of speaking to him, cooperating and telling the truth – in other words, the advantages of giving up his Fifth Amendment right – exploited the coercive environment to prompt this defendant to speak to him.  This is precisely what the *Miranda* rule was designed to prevent.

In the face of its irreconcilable conflict with virtually everything the Supreme Court said in *Miranda*, the government nonetheless claims that this "information" Agent Wilbert "conveyed" in his spiel "has been deemed appropriate by the Second Circuit."  Gov't Letter at p. 5.  As applicable to the facts of Mr. Barro's case, however – that is, in the context of what it is appropriate for the authorities to say to a defendant *before* advising him of his rights – the government's claim is flatly incorrect.  Thus, the Second Circuit cannot, and has not, attempted to overrule or modify *Miranda*.

If anything, the Second Circuit has indicated that a "spiel" like Agent Wilbert's, though acceptable if delivered to a defendant who has already made a valid waiver after being properly a advised of his rights, would be improper if directed at a defendant *before* advising him of his rights.

Thus, in *United States v. Alvarado*, 882 F.2d 645 (2d Cir. 1989), where agents stated to the defendant that it would be in her best interest to cooperate, that any cooperation would be brought to the prosecutor's and judge's attention, and that failure to cooperate could result in a 10-year prison sentence, the Court emphasized: "It is uncontested that [the defendant] had her *Miranda* rights explained to her, and signed a written waiver of those rights, *prior to* the events above described."  *Id.* at 849 (emphasis added).  *See* Gov't Letter at p. 5.

5

And in *United States v. Ruggles*, 70 F.3d 262, 265 (2d Cir. 1995), also cited by the government, the Court emphasized: "Once [Ruggles] had been advised of his rights, the agents were free to discuss with him the evidence against him and the reasons why he should cooperate").

Similarly, in *United States v. Pomares*, the defendant was advised of his rights "[u]pon his arrest" at his home and then taken to the DEA office "where, prior to questioning, he was again advised of his rights by" the agent. "*After being advised of his rights* on each of these occasions, Pomares was told that he faced heavy penalties for his smuggling activities, that he was his own best lawyer, and that the wisest course of action would be to cooperate with the government rather than exercise his right to remain silent." 499 F.2d 1220, 1221-22 (2d Cir. 1974) (Emphasis added)

"Having fairly and fully advised Pomares of his constitutional rights, as required by *Miranda*," the Court held, "the agents were free to discuss with Pomares the reasons why he should cooperate. It was quite proper in the course of such discussion to mention the situation which Pomares faced and the advantages to him if he assisted the government. ... There was every reason for the agents to act as they did; their conduct did not violate the letter or the spirit of the holding of the Supreme Court in Miranda." *Pomares*, 499 F.2d at 1222.

The agents in Mr. Barro's case, however, instead of "fairly and fully" advising him of his constitutional rights, first exhorted him to speak to them and explained why giving up his Fifth Amendment rights was his best course of action. *See Miranda*, 384 U.S. at 476.

6

This improper and misleading advice violated both the letter and spirit of *Miranda*, and requires that Mr. Barro's statements be suppressed.

## CONCLUSION

For the reasons advanced here, at the post-hearing argument and in defendant's previously filed motion and memoranda, the defendant's motion to suppress should be granted.

Brooklyn, New York
March 6, 2013

                                                      Respectfully submitted,

                                                      Kannan Sundaram, Esq.
                                                    Attorney for the Defendant
                                                    Federal Defenders of New York
                                                    One Pierrepont Plaza - 16th Floor
                                                    Brooklyn, New York  11201